**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JULIUS LOCKHART, Plaintiff,** | : | **CIVIL ACTION** |
| **vs.** | : | **NO. 12-0133** |
| **CITY OF EASTON, et al., Defendants.** | : | |

**M E M O R A N D U M**

**STENGEL, J.** **September 17, 2013**

Julius Lockhart and his daughter Ariana Lockhart bring this civil rights action against the City of Easton, Chief of Police Larry Palmer, Detective Kevin Krische, and Officer Eric Campbell. Plaintiffs assert a host of federal and state law claims stemming from Defendants' September 26, 2009 search of Mr. Lockhart's property and his subsequent arrest and guilty plea. Defendants moved for summary judgment on all claims. For the following reasons, I will grant the motion.

## I. BACKGROUND[1]

As of September 2009, Mr. Lockhart owned a property in Easton, Pennsylvania. The property comprised a single building with three subunits, addressed as 333, 331, and

[1] The facts are gleaned from the parties' statements of material facts and the record, viewed in the light most favorable to Plaintiffs as the non-movants. I note, however, that although Plaintiffs purport to dispute nearly every one of Defendants' factual assertions, they repeatedly do so without citation to the record or without actually addressing the fact asserted. I will not engage Plaintiffs' deliberate obfuscation. Assertions of fact not properly controverted will be deemed uncontested for the purpose of the instant motion. Fed. R. Civ. P. 56(e)(2); Stengel Policies and Procedures II.C.4. Additionally, as to Plaintiffs' request that I "grant an additional 60 days for discovery from the date of the receipt of certain documents from the Pennsylvania State Police," Doc. No. 20 at 1-2, I note that Plaintiffs have made no attempt to supplement the record in the months since briefing on this motion closed. I therefore assume Plaintiffs have nothing to add.

329 Folk Street.[2] Mr. Lockhart lived and operated a recording studio at 329 and 333 Folk Street, respectively. He leased 331 Folk Street to a third party, who operated a convenience store.

### A. Application for the Warrants

On September 25, 2009, Detective Krische of the Easton Police Department submitted warrant applications for 329 and 333 Folk Street. The supporting affidavits of probable cause were, apart from the address, identical and provided in relevant part:

> 1. That your Affiant is a sworn Police Officer for the City of Easton and is currently assigned as a Vice/Narcotics Detective in the Criminal Investigations Division. Your affiant has been a sworn Law Enforcement Officer in the Commonwealth of Pennsylvania since 2004. Your affiant's primary responsibilities of investigation include Controlled Substances, Prostitution and Gambling. Your affiant has received training from the Allentown Police Academy, the Institute for Law Enforcement Education, Sirchie Laboratories, the Easton Police Department, the Northampton County District Attorney's Office and the Federal Bureau of Investigation. Your affiant is currently a Federal Task Force member for the Federal Bureau of Investigation which primary investigates large scale drug trafficking, your affiant is also a member of the Northampton County Drug Task Force.
>
> 2. Julius Lockhart has been suspected to be involved in drug activity in the Easton area for at least the last ten years. The earliest EPD Reports I have access to indicate Lockhart was stopped by EPD on August 1, 1999. The officer reported that Lockhart engaged in behavior consistent with drug activity.
>
> 3. On April 23, 2009 EPD Officer Pellegrino responded to a noise complaint in the area of the 100 block of E. Wilkesbarre St. The complainant, who did provide their name and phone number, also stated they suspected the address to be involved in drug activity. Officer Pellegrino discovered the music was coming from 329-333 Folk St. Officer

[2] Mr. Lockhart testified that 333 and 331 Folk Street were alternatively referred to as 333A and 333B Folk Street, respectively. Lockhart Dep. at 43-44. Photos of the property's exterior taken prior to the search show the units marked as 333, 331, and 329 Folk Street. Doc. No. 19-5. The door to 333 Folk Street clearly advertises "recording studio" services. Id.

Pellegrino did file a non-traffic citation to Julius Lockhart for the noise violation.

4. On September 4, 2009 I spoke with a cooperating source (CS1) regarding Julius Lockhart. CS1 stated Lockhart is involved in trafficking cocaine in the Easton area. CS1 stated he/she has known Lockhart for years and has bought crack cocaine from him multiple times. CS1 stated he/she often goes directly to Lockharts [sic] home and purchases cocaine there.

5. On September 13, 2009 EPD Officers Boorstein and Campbell responded to the area of Folk and W. Nesquehoning Sts. for an anonymous complaint of drug activity. The complainant did provide a clothing description and on arrival Julius Lockhart was observed walking on the sidewalk between 329 and 333 Folk St. Lockhart matched the description given the complainant and was questioned by Officers and did claim ownership of the building in which he was standing in front of (329 and 333 Folk St.).

6. On September 16, 2009 Stevie Bryant was arrested by EPD Officer Ocetnik in the 100 block of W. Kleinhans St. and found to be in possession of crack cocaine. Bryant stated he was in Julius Lockhart's recording studio (which he later pointed out to EPD and is just a block from where he was arrested) on September 15 and 16, 2009. He stated while he was in the studio he observed large quantities of cocaine being bagged by Lockhart. Bryant stated other males were present in the studio helping Lockhart and were carrying handguns. EPD has responded to multiple calls at 333 Folk St. and know it to contain a recording studio. I also obtained records from the City of Easton Codes Department which show plans submitted in 1995 for a recording studio in 333 Folk St.

7. On September 22, 2009 I observed Lockhart arrive in the 100 block of W. Wilkesbarre St. and enter 333 Folk St.

8. On September 23, 2009 I retrieved two bags of trash left at the curbside directly infront [sic] of 329 Folk St. I did not observe any other trash infront [sic] of the building nor were any trash bags in front of the 333 Folk St. door. Upon inspecting the trash I located mail for 329 Folk St. In the same bag I located three glassine baggies with one or multiple corners missing. Through my training and experience I recognized the bags to be in a condition consistent with cocaine packaging in the Lehigh Valley area.

> 9. On September 23, 2009 I conducted surveillance on 329 and 333 Folk St. I observed Lockhart exit 329 Folk St. and walk around the corner to 333 Folk St. Lockhart then appeared to unlock 333 and enter the building. While walking between 329 and 333 Folk St. Lockhart checked the handles of the doors and appeared to be checking the locks.
>
> 10. Both 329 and 333 Folk St. appear to be connected structurally. I checked Northampton County Property Records (via NCPub.org). It indicates that 329 Folk St. is owned by Julius Lockhart. There is no record for 333 Folk St. although the picture in 329's record also appears to contain 333 Folk St.
>
> * * *
>
> 19. That based on the above information I respectfully request a search warrant be granted for 329 Folk St. Easton[,] PA 19042.

Doc. No. 19-1 at 3-5; id. at 10-12 (affidavit for 333 Folk Street). A magisterial district judge approved the applications that same day and issued search warrants for 329 and 333 Folk Street.

**B. Execution of the Warrants and Aftermath**

To execute the warrants, the Easton Police Department engaged the Pennsylvania State Police Special Emergency Response Team (SERT). According to Detective Krische, this decision was made for several reasons, including Mr. Lockhart's possession of numerous registered firearms; his criminal history, which included charges for assault and carrying unlicensed firearms; and the statement of Mr. Bryant, who indicated he was recently present in Mr. Lockhart's recording studio and observed individuals bagging cocaine while carrying handguns. The warrants were accordingly deemed high risk, and because the Easton Police Department did not have a tactical team at that time, it engaged SERT.

At 6:10 a.m. on September 26, 2009, SERT breached the doors to 333 and 329 Folk Street.[3] SERT used an "explosive shot" to breach 333 Folk Street's door because of a "metal plate covering the locking assemblies." Doc. No. 20-2, Ex. 13. Immediately thereafter, a separate SERT team conducted a "break-and-rake" of 329 Folk Street's porch window and "began [its] attempt at breaching the door" with a battering ram. Id. at Ex. 16.[4] SERT eventually gained entry and proceeded to clear both units.[5] During this time, Detective Krische and other Easton police officers were stationed roughly a block away; they began their search after SERT secured the property. No one was injured during SERT's initial breach or the subsequent search.[6]

Mr. Lockhart was found in his bedroom on the second floor of 329 Folk Street.[7] There, Detective Krische seized a small amount of marijuana, multiple glassine baggie

---

[3] The details of SERT's actions were not well developed through discovery and are taken almost entirely from a small number of incident reports.

[4] Mr. Lockhart testified that SERT "shot [a] flash gr[en]ade" into 329 Folk Street's living room, Lockhart Dep. at 53, but this is not reflected in SERT's incident reports or any other portion of the record.

[5] The record does not clearly indicate whether SERT entered the convenience store at 331 Folk Street. Mr. Lockhart testified that SERT entered 331 Folk Street through an interior door, Lockhart Dep. at 43-45, and that this provides another basis for his unreasonable search claim, Doc. No. 20 at 31-32. An incident report produced by SERT indicates only that the team breaching 333 Folk Street "clear[ed] a gymnasium area and a garage that were connected by secured doors." Doc. No. 20-2, Ex. 12. Assuming SERT did enter 331 Folk Street, any unreasonable search claim by Mr. Lockhart would fail, as that unit was indisputably occupied entirely by a third party and Mr. Lockhart has not even attempted to establish that he had a reasonable expectation of privacy. Miller v. Hassinger, 173 F. App'x 948, 952 (3d Cir. 2006); Marcavage v. Borough of Lansdowne, Pa., 826 F. Supp. 2d 732, 740-41 (E.D. Pa. 2011).

[6] Although Mr. Lockhart testified that he was told Ariana Lockhart was in the recording studio at the time SERT made entry, the weight of the record reflects that SERT located her on the second floor. This fact is, in any event, immaterial.

[7] Plaintiffs object to Detective Krische's allegedly hearsay incident report, from which much of the information that follows was taken. Doc. No. 19-4. They make no argument and cite no law in support of this objection (and, of course, they rely heavily on incident reports produced by members of SERT). Detective Krische's report is admissible as a public record to the extent it consists of his personal observations. Fed. R. Evid. 803(8). The report consists almost entirely of Detective Krsiche's personal observations. To the extent relevant portions of it do not, such as SERT's indication of where it initially found Mr. Lockhart, they are duplicative of

pieces, rolling papers, an unknown white powder, four registered firearms, and one unregistered firearm containing three rounds of ammunition. He was charged via summons with tampering with evidence, possession of marijuana, and possession of drug paraphernalia. In April 2010, as part of a negotiated plea, Mr. Lockhart pleaded guilty to possession of drug paraphernalia and was sentenced to six months of probation.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Summary judgment is therefore appropriate when the non-moving party

---

other record evidence to which Plaintiffs do not object. E.g., Lockhart Dep. at 49 (acknowledging that he was found by SERT in his room).

fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the Court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The Court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the Kamau on the evidence presented." Id. at 252. The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## III. DISCUSSION

### A. Unreasonable Search and Seizure (Count I)

I begin with the epicenter of Plaintiffs' claims: the validity of the warrants. Plaintiffs contend that the warrants were not supported by probable cause.[8] I disagree. The affidavits underlying the warrants gave the magisterial district judge a substantial

[8] Plaintiffs also argue that Detective Krische recklessly disregarded the truth by including information in his affidavit that he knew to be unreliable and for which he lacked personal knowledge. Both contentions are without merit. As indicated below, personal knowledge of the affiant is not required so long as the totality of the circumstances gives rise to probable cause. Further, Plaintiffs' repeated claim that Detective Krische conceded the cooperating source's unreliability is not borne out by the record. At most, the record reflects that Detective Krische would not use the cooperating source for controlled buys because she previously "sold twenty dollars of something fake that she purported to be crack cocaine." Krische Dep. at 49. Plaintiffs' argument might have some merit if Detective Krische had cited a controlled buy by the cooperating source in his affidavit, but he did not. Because Plaintiffs have not shown that Detective Krische made a false statement or omission in his affidavit, Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997), I will take the affidavit as it stands and assess whether it gave rise to probable cause.

basis for finding probable cause, and even if they did not, Detective Krische is entitled to qualified immunity.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The inquiry asks whether the defendant violated a constitutional right and if so, whether that right was clearly established at the time of the alleged violation. Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Both questions must be answered in the affirmative to defeat a claim of qualified immunity. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, I begin with whether the warrants were supported by probable cause and thus whether Detective Krische violated Plaintiffs' Fourth Amendment rights in securing them.

**1. Constitutional Violation**

Probable cause exists to support a search warrant where, given the totality of the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). This is "a practical, common-sense" assessment, id., taking into consideration "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,'" id. at 241 (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). As a reviewing court, however, I am not to conduct this inquiry *de novo*; my job "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at

238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). Indeed, "the conclusions of a neutral magistrate regarding probable cause are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided." United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005).

Plaintiffs contend that the affidavit does not sufficiently detail the reliability of Mr. Bryant and the confidential source, and that apart from the trash pull, Detective Krische lacked personal knowledge of the affidavit's contents. As for the latter contention, it is well-established that "an affidavit 'need not reflect the direct personal observations of the affiant,'" United States v. Pearson, 181 F. App'x 192, 195 (3d Cir. 2006) (quoting Aguilar v. Texas, 378 U.S. 108, 114 (1964)), and may be based on hearsay, so long as so long as the totality of the circumstances gives rise to probable cause, Gates, 462 U.S. at 241-46; see also United States v. Stearn, 597 F.3d 540, 555 (3d Cir. 2010). Turning, then, to the pertinent hearsay in this case, I conclude that the magisterial district judge had a substantial basis for crediting the statements of Mr. Bryant and the confidential source and for ultimately finding probable cause.

Although it abandoned the rigid "two-pronged test" from Aguilar, 378 U.S. 108, and Spinelli v. United States, 393 U.S. 410 (1969), the Gates Court nonetheless incorporated a hearsay source's "veracity" and "basis of knowledge" as "relevant considerations in the totality-of-the-circumstances analysis." 462 U.S. at 233. "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. If, for example, a court "entertain[s] some doubt as to an informant's motives, his explicit and

detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." Id. at 234.  Additionally, the Gates Court "recognized the value of corroboration of details of an informant's tip by independent police work."  Id. at 241.

Here, the veracity of Mr. Bryant and the confidential source was not readily apparent from the affidavit.  The affidavit did not, for instance, detail circumstances typically indicative of a hearsay source's veracity, such as proven cooperation with the police.  E.g., United States v. King, 182 F. App'x 88, 90-91 (3d Cir. 2006) (crediting hearsay source "who had a history of providing reliable information to the police").  As indicated, however, this deficiency does not alone mean that a substantial basis for probable cause was lacking.  Stearn, 597 F.3d at 555 ("On the facts of Gates, neither 'veracity' nor a 'basis of knowledge' was apparent from an informant's anonymous letter.").

Mr. Bryant and the confidential source both possessed a strong basis of knowledge, namely consistent, first-hand observations of illegal activity in Mr. Lockhart's home and recording studio.  The confidential source, for instance, stated that "he/she has known Lockhart for years," that he/she "has bought crack cocaine from him multiple times," and that "he/she often goes directly to Lockharts [sic] home and purchases cocaine there."  Likewise, Mr. Bryant "stated he was in Julius Lockhart's recording studio (which [Mr. Bryant] later pointed out to EPD and [which] is just a block from where he was arrested [while in possession of crack cocaine]) on September 15 and 16"—just nine days prior to the affidavits' filing—and "observed large quantities of

cocaine being bagged by Lockhart." These specific, first-hand observations were entitled to significant weight, United States v. Woods, 254 F. App'x 889, 892 (3d Cir. 2007) ("Courts accord great weight to . . . first-hand observations shortly before a search."), particularly in light of Detective Krische's independent corroboration.

The affidavit provides that Detective Krische "retrieved two bags of trash left at the curbside directly infront [sic] of 329 Folk St.," that "[u]pon inspecting the trash [he] located mail for 329 Folk St.," and that "[i]n the same bag [he] located three glassine baggies with one or multiple corners missing." Although the affidavit does not indicate that drugs were found in the baggies, "it is reasonable to infer that drug dealers might use corners of sandwich bags to package their product." United States v. Miller, 134 F. App'x 531, 533 (3d Cir. 2005). Detective Krische's own investigation therefore lent credibility to the hearsay sources and substantiated their claims that Mr. Lockhart was dealing drugs out of his home and recording studio.

Considering the totality of these circumstances and mindful of the deference I must accord the magisterial district judge's probable cause determination, I find that Detective Krische's affidavit passes muster. Although it could have been strengthened through further corroboration or specific averments of veracity, in light of the first-hand observations provided by Mr. Bryant and the confidential source, the timeliness of Mr. Bryant's observations, and Detective Krische's validating independent efforts, the affidavit provided the magisterial district judge with a substantial basis for finding probable cause.

**2. Immunity**

Even if the affidavits did not give the magisterial district judge a substantial basis for finding probable cause, Detective Krische would be entitled to immunity. "'[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." Messerschmidt, 132 S. Ct. at 1245. Immunity will be lost only "where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Id. (quoting United States v. Leon, 468 U.S. 897, 923(1984)). "[T]he threshold for establishing this exception is a high one." Messerschmidt, 132 S. Ct. at 1245.

Even if a substantial basis for probable cause was lacking—and I stress that it was not—the instant affidavits were not so obviously deficient that "no officer of reasonable competence would have requested the warrant." Malley v. Briggs, 475 U.S. 335, 346 n.9 (1986). The affidavits did not rely on Detective Krische's "unsupported belief that probable cause exists," or "on a single piece of stale evidence," or, as indicated above, "on an uncorroborated or unreliable anonymous tip." United States v. Pavulak, 700 F.3d 651, 664 (3d Cir. 2012). In other words, the affidavits were "not the sort of skeletal affidavit[s] that [are] too weak to support the shield of qualified immunity." Fiore v. City

of Bethlehem, 510 F. App'x 215, 221 (3d Cir. 2013); see also Gates, 462 U.S. at 239. The affidavits were supported by two sources who personally observed illegal activity in Mr. Lockhart's home and recording studio, activity that was independently corroborated by Detective Krische just two days prior to the affidavits' filing. For these reasons, Detective Krische would be entitled to immunity even if the magisterial district lacked a substantial basis for finding probable cause.

**B. False Arrest (Counts I and IV)**

To prevail on a § 1983 false arrest claim, "a plaintiff must show that police made an arrest without probable cause." Eckman v. Lancaster City, 742 F. Supp. 2d 638, 649 (E.D. Pa. 2010) (citing Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)). Defendants argue that Heck v. Humphrey, 512 U.S. 477 (1994), bars Mr. Lockhart's false arrest claim and that, in any event, probable cause existed to arrest him. Again, I agree with both contentions.

"Under Heck, a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." Gilles v. Davis, 427 F.3d 197, 208-09 (3d Cir. 2005); see Heck, 512 U.S. at 486-87. A valid guilty plea is "sufficient to bar a subsequent § 1983 claim," Gilles, 427 F.3d at 209 n.8, particularly one for false arrest, where success would require a finding of no probable cause and thus would necessary impugn the validity of the plea, Walker v. Clearfield Cnty. Dist. Attorney, 413 F. App'x 481, 483 (3d Cir. 2011) ("[A] guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause."); see also Walke v. Cullen, 491 F. App'x 273, 276

(3d Cir. 2012). Mr. Lockhart was convicted via guilty plea of possessing with intent to use drug paraphernalia. 35 Pa. Stat. Ann. § 780-113(32). The record does not indicate, and Mr. Lockhart does not contend, that his conviction was reversed on direct appeal, impaired by collateral proceedings, or otherwise called into question. Thus, Heck plainly bars his false arrest claim.[9]

Even if Heck did not bar Mr. Lockhart's false arrest claim, it would fail because probable cause existed to arrest him. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). "Probable cause need only exist as to any offense that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994); see also Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007).

Mr. Lockhart does not dispute that the items found in his bedroom—which included, among other things, marijuana, an unknown white powder, rolling papers, and glassine baggies—sufficed to warrant a reasonable person to believe that an offense had been committed. He argues instead that "if the search warrant fails for lack of probable cause . . . there is also no probable cause for [his] arrest." Doc. No. 20 at 27. This argument is unavailing for two reasons. First, as indicated above, the warrants were

[9] Mr. Lockhart does not actually dispute that Heck bars his false arrest claim; he disputes only that Heck bars his unreasonable search claim. Doc. No. 20 at 19. Defendants never made the latter argument, which is why I addressed that claim on the merits. In any event, Heck does bar Mr. Lockhart's unreasonable search claim because it appears the only evidence supporting his conviction was found during the search of his home and recording studio. Success on that claim would therefore necessarily imply the invalidity of his conviction.

supported by probable cause. And second, the exclusionary rule does not alter the probable cause analysis because it is inapplicable in this § 1983 proceeding. Cox v. Pate, 283 F. App'x 37, 40 (3d Cir. 2008) (finding that Petitioner "does not have standing to invoke the exclusionary rule in [a § 1983 false arrest] civil proceeding"); e.g., Christian v. Orr, CIV.A. 08-2397, 2011 WL 710209, at *17 (E.D. Pa. Mar. 1, 2011) ("Whatever the legality of the searches that yielded the marijuana in the pockets of [the plaintiffs'] sweat shorts, possession of this drug is illegal in Pennsylvania and thus provides the basis for the police to effect a legitimate arrest."). Thus, even if the search warrants were invalid, probable cause existed to arrest Mr. Lockhart based on the items found in his bedroom. For these reasons, his false arrest claim fails.

**C. Excessive Force (Count I)**

A police officer's use of excessive force while carrying out a search violates the Fourth Amendment. Estate of Smith v. Marasco , 430 F.3d 140, 148 (3d Cir. 2005) (Smith II). The relevant inquiry "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397 (1989). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may

be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

Plaintiffs' excessive force claim is based entirely on actions taken by non-party members of SERT in entering and securing 333 and 329 Folk Street. Recognizing that these actions were taken by SERT, not Defendants, Plaintiffs attempt to show personal involvement by pointing to Defendants' initial decision to activate SERT and their alleged acquiescence in SERT's methods of entry. Doc. No. 20 at 32-38. I address each argument in turn.

"[A] decision to employ a SWAT-type team can constitute excessive force if it is not objectively reasonable to do so in light of the totality of the circumstances." Smith II, 430 F.3d at 149 (citation and quotation marks omitted). Considering the reasonableness factors set forth in Graham and Sharrar, Defendants' decision to employ SERT was objectively reasonable. Defendants' notified SERT on September 23, 2009. At that time, Defendants knew that Mr. Lockhart possessed multiple registered firearms; that he had just six months prior been charged with assaulting his girlfriend and had twice before that been charged with carrying unlicensed firearms; and that Mr. Bryant had just seven days prior observed "other males" bagging cocaine in Mr. Lockhart's recording studio while "carrying handguns." It was reasonable, based on these circumstances, for Defendants to conclude that they faced a violent, well-armed person not only in Mr. Lockhart but also in an unknown number of armed others. This conclusion was made all the more reasonable given that Defendants' were searching for evidence of drug trafficking. E.g.,

United States v. Jenkins, 188 F. App'x 94, 95 (3d Cir. 2006) ("We have frequently observed that firearms are tools of the drug trade.").

As for the methods of entry, Detective Krische testified that once SERT's assistance is requested, "they determine how the warrant is executed." Krische Dep. at 56. Plaintiffs do not dispute this, but they nonetheless seek to hold Defendants liable for all of SERT's actions. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id.

Although Plaintiffs attempt to connect Defendants to SERT's actions in a variety unavailing ways,[10] the record at most reveals that SERT informed Defendants that an explosive shot would be required to breach the door at 333 Folk Street and that Defendants did "not question that" assessment. Krische Dep. at 56-57. There is nothing to indicate that SERT provided Defendants with advanced notice of any other entry tactic. And as for the explosive shot, I find that SERT's actions were reasonable.

Photos of the property taken prior to the search clearly show that 333 Folk Street's door was secured with metal plates and a deadlock. The record further indicates that SERT attempted to surveil 333 Folk Street, but the windows adjacent to the door were covered with plywood, "preventing any surveillance within the structure." Doc. No. 20-

[10] Plaintiffs contend that Detective Krische "exaggerate[ed] and falsifi[ed] the risk" by informing SERT that "the warrant required explosives," that Mr. Lockhart was a "gun nut," that "controlled crack cocaine buys had been made," and that Mr. Lockhart was associated "with a street gang." Doc. No. 20 at 34. However, Plaintiffs' cited exhibits do not attribute these statements to any Easton police officer, Detective Krische included. Doc. No. 20-1, Exs. 4-6.

2, Ex. 10. Given the totality of these circumstances and those previously discussed, particularly that SERT was entering a building with an unknown internal structure and an unknown number of potentially armed persons, it was reasonable to conclude that breaching the door with an explosive shot was the quickest and safest way to effect entry.[11] Plaintiffs' excessive force claim therefore fails.

**D. Deprivation of Due Process/Unconstitutional Taking (Counts I and V)**

In Counts I and V, Plaintiffs allege they were deprived of liberty and property without due process and, in the latter case, without just compensation.[12] The basis for these claims is not clear, and Plaintiffs seem to have made no attempt to develop them through discovery. From the Complaint and opposition brief, Plaintiffs appear to allege: 1) a procedural due process claim for deprivation of Mr. Lockhart's liberty interest in his reputation when "[t]he police" issued a press release indicating that previously dismissed domestic violence charges were still pending and when they failed to report the disposition of these charges to the State Police; and 2) procedural and/or substantive due process claims for deprivation of Mr. Lockhart's property when he was forced to "sell his home and rental properties for far less than they were worth [to] a person related to

[11] Plaintiffs take issue only with the necessity of the explosive shot; they do not allege a knock-and-announce violation. In any event, the record indicates that SERT repeatedly announced their presence through the "Utility Van PA system." Doc. No. 20-2, Exs. 10-11.

[12] To the extent these claims are also brought under the Fifth Amendment, they fail for want of federal action.

officers who performed the search;" and 3) a unconstitutional takings claim for the same sale of his property. Doc. No. 20 at 39-40.

Whatever the merit of these claims, Plaintiffs have failed to marshal any evidence of Defendants' personal involvement. Rode, 845 F.2d at 1207. No press release has been produced in discovery, and although Plaintiffs argue that Detective Krische "admitted that Easton Police prepared a press release on the raid," Doc. No. 20 at 39, the record at most reflects that a press release is "customarily" prepared following a warrant's execution and that Detective Krische could not remember if he prepared one in this instance. Krische Dep. at 96. Even if Plaintiffs could show that Defendants prepared the alleged release or failed to report the disposition of dismissed charges, their claim would still fail, since Mr. Lockhart claims nothing more than reputational injury and loss of private employment, and thus has failed to satisfy the "plus" prong of the "'stigma-plus' test." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006); see Cooley v. Barber, 07-3327, 2007 WL 2900550, at *2 (3d Cir. Oct. 4, 2007) (declining to recognize a "protected interest in private employment"). Plaintiffs' claims regarding the sale of Mr. Lockhart's property are totally devoid of factual support. There is nothing in the record concerning this sale, much less evidence that Defendants were "related" to or colluded with the purchaser. Defendants are therefore entitled to judgment on these claims.

**E. Municipal Liability (Counts II and III)**

Because municipal liability under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), necessarily depends on the existence of an underlying

constitutional violation, Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003); Munoz v. City of Union City, 481 F. App'x 754, 760 (3d Cir. 2012), which Plaintiffs have failed to show, Defendants are entitled to judgment on Counts II and III.

### F. State Law Claims (Counts VI – XII)

Having granted judgment in favor of Defendants on all of Plaintiffs' federal claims, and finding no compelling reasons to exercise supplemental jurisdiction over Plaintiffs' state law claims, Hedges v. Musco, 204 F.3d 109, 122-23 (3d Cir. 2000), Counts VI through XII are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. An appropriate Order follows.